and the Consolidated Case. Mr. Yang. Mr. Chief Justice, and may it please the Court, the issue in this case is whether the Trails Act converts all federal, state, and private lands traversed by the Appalachian Trail into lands administered by the Park Service. It does not. The Act simply charges the Secretary of the Interior with overall administration of the land. The Park Service does not. It repeatedly distinguishes between the agency administering the trail and the land managing agencies administering the land. The Park Service thus coordinates agencies and organizations responsible for their own segments of the trail and affords certain trail ride responsibilities, but the land managing agencies ultimately take care of the trail on their lands. If a tree falls on forest lands over the trail, it's the Forest Service that's responsible for it. You don't call the nine Park Service employees at Harpers Ferry and ask them to come out and fix the tree. Respondents' theory is inconsistent with the Act and would dramatically change the national trail system. Respondents, for instance, argue that the trail is land and it's administered by the Park Service. So their position is that the entire trail is federally administered area of land. But if you look at page 14A, this is section 1246H1, it requires that the Secretary shall encourage States to operate, develop, and maintain portions of such trails, and this is scenic trails, located outside the boundaries of federally administered areas. If they're right, there is no thing, nothing outside the trail outside the federally administered areas because the trail is a federally administered area. Their reading cannot be right. It would also dramatically increase, dramatically change the trail system by transferring vast amounts of land into the National Park Service, which the Park System, which the Park Service administers and regulates to conserve the natural environment. Not only would TVA's two hydroelectric dams be put into the system, nearly 1,000 miles of the Forest Service lands, more than a dozen towns, including Hanover, New Hampshire, and Dartmouth College, through which the Pailton Cross is straight through, numerous bridges over rivers, including the bridge over the May I ask you a preliminary question? This issue of the Mineral Leasing Act is the third of the issues that the Fourth Circuit dealt with, and it was the one to which they devoted the least number of pages. This case, in any event, am I right, is going back for reconsideration of the environmental consequences, going back under the Forest Management Act and the National NEPA? Correct. So, since those reviews will be going on, is there the potential that the Mineral Leasing Act question will be moot because the decision might be to make that under that legislation, the environmental legislation, this crossing over the trail is impermissible? Yes. That issue is not moot now. It could potentially be moot, but that is true about any interlocutory case that the Court takes up. Things can change that make the issue before the Court no longer necessary at the end of the day. But the Court already considered that at the cert stage. The reason that this is an important issue is because if the trail cannot be, right of way, cannot cross 600 feet under the trail and come in and out, not on park service or forest service properly, but on private land, then the whole enterprise is done. We're done. They have to start over. So, that is an important and nationally significant issue that the Court granted cert on. So, that's why we're here. But then what do we make of the line in the reply brief that says, no one doubts that the trail is in the national park system? I think what we're saying is that the trail is administered by the park service. It's not land in the national park system. One of the main issues in this case is whether in stating that the Secretary of the Interior shall primarily administer the trail as a foot, the Appalachian Trail as a footpath, whether that delegation, which Congress then said concerns the overall administration of the trail, whether that confers authority to administer the lands over which the trail passes. And our answer is that is not the case, and it's inconsistent not only with the Texas statute, but the way that the statute has been implemented, as well as the way that the Appalachian Trail has existed even before the statute. Sotomayor, you. Ginsburg. Well, if it is inconsistent with the statutory provision that says the national park system, first we're told, yes, this trail is in the national park system. And then the statutory definition of the national park system says it consists of certain areas of land and water. So how is the trail not land if it's in the national park system? What part of the reply? I'm trying to — I don't remember us saying this. The reply brief 17 says no one doubts that the trail — I think it's toward the end of the page — no one doubts that the trail is in the national park system. I'm not seeing — is this our reply brief? No, it's the other reply brief. Oh. I think Mr. Clement — I don't have that in front of me right now. Then maybe we'll ask Mr. Clement. Ms. Clement may be able to address that. But I think our view, and I think it's shared by Mr. Clement, that the trail is not land. It's certainly not land that's administered within the meaning of the mineral lease agreement. It's a difficult distinction to wrap one's head around, Mr. Yang. You know, I would understand if you said to me the trail traverses the forest, everybody would understand what that meant. There's some broader forest and the trail cuts a path through it. But you're saying that the trail is distinct from the trail. I mean, from the distinction in real life. I don't know if that's — When you walk on the trail, when you bike on the trail, when you backpack on the trail, you're backpacking and biking and walking on land, aren't you? You're certainly sometimes walking on land. You're also walking on things like bridges. You're also walking on — for instance, the trails include waterways. So Congress recently enacted — expanded the Lewis and Clark Trail to include the Ohio River, all of the Ohio River from Pittsburgh to the Mississippi, then the Missouri up to St. Louis, and all the way to the West Coast from there. No one thinks that those waters are all in the National Park Service. And that's because a trail traverses the lands or waters, and when you move a trail, these trails get relocated for all kinds of reasons, small or wide. Well, they might get relocated, but that just means that now there's different land. It's just — But that means the trail isn't — You're great writers, and you're great writers, and the briefs are strange to read because you can't ever just say what you mean, which is that the trail is a piece of land. So you find yourself wrapped up in these strange locutions about the trail traversing land. It's like you're imagining some thing that goes on top of it somehow. I don't believe so. The Trails Act needs to be read in the context of all the statutes that deal with land administration. This is a large area of the law. Those trails — those statutes make very clear when Congress wants to shift administrative responsibility over land. So, for instance, the Rivers Act, enacted the very same day. Let me ask you a question, Mr. Yang, because you said — and this would be very meaningful to me — you said you would call the Forest Service if a tree fell over the path. I guess when I looked at these regulations, what strikes me about them is that on the Appalachian Trail, it seems to me that the National Park Service — it would be different on the Pacific Trail, which is a weirdness of its own, but on the Appalachian Trail, it's the National Park Service that regulates uses along the trail, vehicles on the trail, development and maintenance of the trail. In other words, it's the National Park Service that basically does land use regulation, and the land is the trail. Yang, the regulation I believe you're talking about is in I, that the authority you're talking about? Kagan This is 1246 — it's the statute. Yang Right. Kagan 1246C, 1246F, 1246H1, 1246I. Yang I requires the concurrence of the heads of — Kagan It basically puts the — excuse me. It basically puts the director of the Park Service in charge of regulating land use on the trail, on the land. Yang I don't think that's correct. It does provide for certain things, trail markers. If you're looking at C, it's — Congress forbids cars on trails. When you're looking at regulatory authority, that's under I. There, it requires the concurrence of the heads of any other Federal agencies administering the lands. And in fact, the way this has been implemented is the Park Service has enacted a regulation at 36 CFR 7.100 that applies only on Park Service-administered land. Kagan I'll just give you an example, and you can tell me what you make of it, because it would seem to me to cover the case where the tree falls on the trail. It says, this is 1246H1. The secretary charged with the administration, which here is the secretary of interior, shall provide for the development and maintenance of these trails. Yang And it says shall provide for, not do it. The way that that's provided for is the way it's always been provided for, which is through a memorandum of agreement with the land-managing agencies. So the Forest Service has a memorandum of agreement that dates back to 1970, and it requires that the Forest Service take care of the land. Sotomayor Mr. Yang, before your time goes out, because it's inherent in the — in how you're answering Justice Kagan, why is it that two agencies can't have simultaneous administration and even possibly management responsibilities? I was taken with the NRDC's amicus brief, and the Mineral Leasing Act has an entire provision devoted to when are two agencies responsible to administer a piece of land. Let me finish my question. And assuming that I accept that two agencies can both administer, wouldn't the Trail Act supersede the forest department's permission to grant a right of way for pipes? Because doesn't the Trail Act supersede any other permission? The answer is no. There needs to be more clarity. Congress acts clearly when it does that. But let me address this. Well, it has. It has. But why can't two agencies have simultaneous or coexistent responsibilities? Your time has expired, but I'll allow you to very briefly respond. There's three types of instances where that happens. Two separate trails, parcels administered separately, a right of way goes through  That's one. There's another instance where lands withdrawn from the public lands and provided for a military use, that is in some ways dual, but it's not in the relevant sense because it is temporarily separated. And then third, sometimes you take mineral rights and leave it with the underlying agency. But nothing like this with contemporaneous and coterminous administration of the land. You're requiring two agency heads with different agency mandates and different systems to regulate the same thing. Thank you, Mr. Yang. Mr. Clement. Mr. Chief Justice, and may it please the Court. Respondents' effort to convert all of the land traversed by a park service administered trail into lands in the National Park Service fails for reasons of text, context, and consequences.  In the text, multiple provisions of the Trails Act draw a distinction between the trail and the land it traverses and makes clear that administrative authority is granted only over the former and leaves the latter jurisdiction over the lands themselves undisturbed. Moreover, the Trails Act itself makes clear that the trail can be moved. It makes sense for a trail or a trail route to move every time a tree falls. It doesn't make sense for the status of lands to change every time the route moves. The context powerfully reinforces this key distinction. If you want to see a model of a statute that transfers land between Federal agencies and makes the land subject to the Organic Act, you need look no further than the Rivers Act passed the same day by the same Congress. The reason, though, when it did that in the Rivers Act, it did exactly what you'd expect it to do when it transfers land. It talked about the width of the land transferred, the acreage involved, and then left no doubt that if the land was transferred to the Park Service, it became subject to the Organic Act. And then, of course, there are the untenable consequences of respondents' position. Thousands and thousands of acres of parkland gets transferred to the Forest Service, and these thousand-mile trails get converted into barriers to pipeline development. Breyer. Where is the pipeline? I'm trying to, not in two dimensions, but in three. I mean, think of a trail, but I couldn't get out of the briefs. I mean, there's a trail, and say it's going across a ridge. It's going along a ridge. Now, they don't want to put the pipeline on the trail. They want to put it somewhere underground. Well, how far from where the trail is up here, how far below is the pipeline supposed to go? 600 feet. 600 feet below. And where does it enter? Does it enter on, you know, there's an easement or something for views and so forth. Does it enter the ground within the area that is within that easement or before and it comes out after? It enters and exits on private land, not on Forest Service land. I mean, you know, the problem with briefs is they're two-dimensional. But, I mean, the way to understand this is there's a ridge line. Up here on the top of the ridge is the Appalachian Trail and the Blue Ridge Parkway. And then the pipeline route goes under both 600 feet below the trail and probably 800 feet below the parkway because the parkway is a little bit higher on that ridge. And it enters before you get to the area and it leaves after the area, which is reserved to the trail or the views. Exactly. Which is why both the Park Service and the Forest Service, who care very much about the experience on both the trail and the parkway, could conclude that this particular pipeline, given how far below all of the action it was crossing, did not disturb the experience of the trail or the pipeline. I had the same thought as Justice Breyer, but maybe there's something wrong with this simple way of looking at the case. When I think of a trail, I think of something that is on top of the earth. And when I think of a pipeline that's 600 feet below the surface, that doesn't seem like a trail. So instead of having to draw this distinction between the trail and the land, why can't we just say that the trail is on the surface and something that happens 600 feet below the surface is not the trail? You could do that, Justice Alito, and I suppose my clients would be perfectly happy to win this case on that ground. I do think, though, that there is a critical difference between administrative authority over that trail up there and administrative authority over the lands. And it may be a little bit hard to square with your first reading of 1246-H1, but it is the case that when a tree falls in the national forest in Georgia or in New Hampshire, the nine or ten federal employees who are the entire total of the park unit that administers the trail from Harpers Ferry, West Virginia, do not get on a plane and fly up to New Hampshire and Georgia and deal with it. It's the forest, sir. What is the practical difference between viewing the case in those two ways? Surface, 600 feet below, trail, land. What is the difference between those? So for pipelines, I suppose, because most of them are going to go pretty far under, I think you could draw that distinction. I think, though, as a practical matter, you would still have differences. I mean, I'll give you just one very practical example. In the national forest up in New Hampshire, because national forests are for forest services, which are supposed to be conserved and unimpaired. So forest land can be used for multiple purposes. One of the purposes that is allowed in New Hampshire is to tap the maple trees to get sap out of the trees. The sap lines run across the surface of the trail, and they do that with the permission of the forest service. So that's something that, you know, I think if you were to construe all of the sudden that the surface is in as lands in the National Park Service, that would all of the sudden be under Park Service jurisdiction. I think that isn't quite the question. I mean, we don't have to decide every issue, you know, in the Park Service, and if the people who make the sap want to challenge it or somebody, fine. The question was, what harm would we do if we just restrict this to the question that answers it, in your view? I mean, you'd win. You'd say, but it would have to do with pipelines, and it would have to do with things you cannot see from the trail, and it would have to do with things that are well below the ground. And on those, which is before. You see, that's, I think, the point. And we don't — why decide cases in this Court that have all kinds of implications which we can't quite see like that one? If somebody wants to challenge the Park Service coming and removing a tree, let them. So, Justice Breyer, I represent the Atlantic Coast Pipeline. It's not my job to resist winning this case on a narrow ground. So I am not going to do that. Mr. Clement, I'm very grateful you said that. I think that there are, aren't there, some problems with that view inherent in the language of the Act and in definitions? Doesn't the Act give the Park Service the right for easements below or on top of the trail? That's not how we read that provision, Justice Sotomayor. I mean, we agree with the government in its reply brief that the right way to read 1248a is that if it's on Forest Service land, it's the Forest Service that could grant an easement. And if it's on Park Service land — Sotomayor, let me take a different tact. Generally, when you speak of land, surface land, you're talking about the land underneath it. That's what the cases mostly say, almost always, unless you separate out the two. Well, Justice Sotomayor, I'm not going to spend too much time disagreeing with you, because there is a reason we briefed the case the way we briefed it. So why don't you explain that reason? There is a superficial appeal. I, after reading the briefs and looking at the statute, didn't think it was viable. You didn't either, or you would have briefed it this way. Well, I think it's viable, and I would say one — if I could say one thing in limited defense of it, which is to say when you have a — and we have a case that we cite to this effect, and it's the case of this Court in our reply brief, that generally speaking, if you grant a right-of-way, which is one way of thinking about the trail, it doesn't affect subsurface rights. So that actually does support this way of thinking about it. But here's why we briefed it in the more straightforward way, that you do have to maintain the difference between the trail and the lands. And that is because the argument on the other side is not limited to the Appalachian Trail. It's not even limited to Federal lands. It says that all of the lands — because the Park Service administers the whole trail, and it's not just the Appalachian Trail. There's about two dozen trails that the Park Service administers. And they not only go over bridges and roads. Some of them are downtown. I mean, the Park Service administers the Selma to Montgomery National Historical Trail. Now, if that trail is lands in the Park Service, because we just can't get our head around the idea that trails are different from land, then parts of downtown Selma, downtown Montgomery, are lands in the National Park Service. The Oregon National Historical Trail, also administered by the Park Service, starts in downtown Kansas City, ends up in downtown Portland, Oregon. I don't think downtown Kansas City or Portland, Oregon are lands in the National Park Service. Kagan. Mr. Clement, if we go back to Justice Alito's idea, which was also the way I thought about it, that that was the way to cut this — but then I started looking around and the mineral — I wondered whether you can win under that approach. So here's the argument that you can't win under the surface, subsurface approach, is that the Mineral Leasing Act gives the authority to do rights of way, including pipelines, to the secretary that has — it talks about the surface. It says where the surface of all the federal lands involved in a proposed right of way is under the jurisdiction of one federal agency. The agency head is authorized to grant the right of way. So that suggests under the MLA that the right of way, the substratum, is given to the person with control over the surface. Is that not true? So if I were going to warm to the topic of trying to win this case on the alternative ground, what I would tell you about that is I would say that's not how I actually read the provisions together. That's sort of a subsidiary provision that says how you deal with pipeline rights of way when you have two agencies with jurisdiction over the surface, and it uses that formulation. But when it's really trying to figure out what's the right agency head, it asks which agency head has jurisdiction over the lands. And I think that that — it doesn't say surface in that provision. And I think that's the critical provision. But with one more word about sort of the theory we've actually articulated, I do think if you look at all of these trails, you'll see why Congress picked a different term. And I think it's important to note, it's not like we don't have a term in the statute for the trails. They are components in the national trail system. And that's what Congress called them that. And they called them that on the same day they passed the Rivers Act, where they actually talked about transferring jurisdiction. They talked about acreage. There's a separate section of the Rivers Act, Section 1280, that talks about the interaction of the Rivers Act and the Mineral Leasing Act. All of that was necessary because Congress knew what it was doing, and it was transferring land and making new lands in the national park system, subject to the Organic Act. It said it in hop verba. It was doing no such thing in the Trails Act. Congress isn't crazy. They were creating tens of thousands of miles of trails, most of which would be under no delusion that they were quadrupling, I don't know, probably 40 times increasing the size of the lands in the national park system. If you look at those two maps at the back of our reply brief, you can see the difference in the implications of the theories. It's very modest to look at the second map, which shows you sort of what I would have called, before I got involved in this case, the true national park system. Easy enough to steer a pipeline around that. If you look at the national trail system, it would be a huge barrier to pipeline development. And if you're ever going to apply the elephants-in-the-mousehole type approach to a statute, this is one where it really calls out, especially if you think about the Trails Act. It's got those wonderful quaint provisions that are getting into the details of whether the Park Service or the Forest Service or the private landowners are the ones that should blaze the trail. A statute that addresses those kind of details, in that kind of granular specificity, could not be interpreted to have these transformative effects sub silentio. And don't forget, I mean, I know you said it's, well, you know, there's that Pacific Crest Trail. There's also the Continental Divide Trail. There's also the Pacific Northwest Trail, who are all administered by the Forest Service. Ginsburg. What do you do with your line that I asked Mr. Wang about? You've said that the trail is in the national park system. So, Justice Ginsburg, with all respect, what I do with that line is I keep reading, because it says no one doubts that the trail is in the park system to the extent that the park system administers the trail. And to that extent, it is in the national park system. There are nine or ten rangers sitting in Harpers Ferry, West Virginia, and they have Park Service uniforms. So it – and there probably are statements, offhanded statements in documents by the Park Service that says, yeah, the trail – the entire trail is in the Park Service. But that doesn't make all of the lands traversed by the trail lands in the National Park Service pursuant to the Organic Act. That view of the statute creates all sorts of anomalies. All of the other lands in the National Park Service are subject to regulation by the Secretary of Interior the way you would expect it to without having to get any assent from another agency. When the statute says that the park system consists of lands administered by the Park Service, does it mean administered in full, administered exclusively by the Park Service, or administered in any sense by the Park Service? I think if it has to mean one of those things, it probably means administered in full. But what I think it really, really means is lands. And I think that – I mean, although it – you know, I don't really think it's as metaphysical as you think. I mean, the philosophers at the Park Service and the Forest Service haven't had any problem with this for 50 years. They have dealt with the reality that the trail is, in an administrative sense, under the Park Service, but on a day-to-day basis, the lands stay where they are. The Park Service – Let me ask you this before your time runs out. Is the office of the Park Service – I assume the Park Service has an office here in Washington. Yes. Is that part of the park – is that part of the park system? I don't think it's an area of land administered by the Park Service. But it's administered by the Park Service. No. Yeah, right. And it's in the national park system in some sense. It is? Yeah. But I don't think they have to maintain that building in its unimpaired national state, natural state, which just goes to show not everything that's in the park system in some loose sense is subject to the restrictions of the Organic Act, which require the system, the service, to keep them in an unimpaired state. Many thanks. Thank you, Mr. Clement. Mr. Kellogg. Mr. Chief Justice, and may it please the Court, I want to go directly to the question of whether there's an easy out in this case by saying it's 600 feet under the ground so it doesn't count. I'll call the Court's attention to 1248A, which specifically says that rights of ways are to be granted by the Secretary of the Interior in this case for anything rights of ways upon, over, under, across, or along any components of the Appalachian Trail. So under counts. As Justice Kagan pointed out, the Mineral Leasing Act itself talks about who has jurisdiction over the surface lands. Obviously, the pipeline is going to go under those lands, but it's the one who administers the surface of the lands. And we know that the Park Service administer these lands because Congress made that very clear in the three interlocking statutes at issue here. The Trails Act of 1968 says without any equivocation, the Appalachian Trail shall be The General Authorities Act two years later said all areas administered by the Park Service without limitation are part of one national park system. If it's administered by the Park Service, it is an area of land or water. Whether it's a historic building, whether it's a monument, whether it's a parkway, or which the court in Sturgeon case pointed out, it's up to Congress to decide how broadly to use the term land in a statute. And finally, the Mineral Leasing Act makes it absolutely clear that it extends the rights for oil and gas pipelines to all Federal lands except lands in the national park system. Mr. Kellogg, if you have an easement over land, is there anything unusual about that, that someone, a separation, in other words, before traversing over the land and the recognition that the land itself belongs to somebody else? Well, we're not saying if there's, let's say we have an easement for the trail over private land or State land, the Mineral Leasing Act doesn't cover those. No, no, I know. They can build a pipeline under private lands or under State lands. And in fact, they've done two of that under the Appalachian Trail in just the past five years. I'm thinking more, there seems to be a debate on some metaphysical level about whether you can have a trail, whether you can have land under it, or interests in land that are different. It just doesn't strike me as that unusual a concept that there are property rights that are distinct from rights in the land. But it's still, I mean, if I give somebody an easement to walk across my backyard to get somewhere, I don't think that I'm giving up the land. It's still my land. Well, as we point out in brief, there are two definitions of right-of-way. One is an abstract right of passage over somebody else's land, and the other refers to the strip of land itself over which passage is maintained. The Trails Act repeatedly uses the second definition when it says you're going to require rights of ways for the trail. You can use condemnation proceedings to acquire land for the trail. And most importantly of all, when it says you can grant, the park service can grant a right of way over the trail. So even using the first definition as a right of passage over land, it's indicating that the trail itself is land. When the trail crosses private land, what property rights do you think the park service has with respect to those private lands? I wouldn't say that they have property rights, but as with any inholding of the National Park System or the Forest Service, which has lots of inholdings of private land, there are still certain regulations that can be established for those lands. Well, I don't think that answers my question. Do they have any property rights over the private land? The Trail Act take any property rights away from private land owners other than essentially an easement? Essentially what they have is an easement. But this Court has made clear. First of all, I should point out that the Forest Service regulations specifically exclude private and state lands from the applicability of their regulations, with a few exceptions. Like in 36 CFR 6.2, it says you can't put solid waste in these private lands. So there are some restrictions. If you have only an easement over private land, do you have anything more over land that is administered by the Forest Service? The land is administered by the Park Service. And that's absolutely clear in the Trails Act. When it says such things as the Park Service gets to select and choose the route, they decide the width of the trail, they establish the acreage for the trail, which they've done here, which is 250,000 acres along the entire length of the trail, all of which they say is a unit of the park system. Your Honor. But once the trail is the trail, who regulates its use and who takes care of it? Well, authority can be divided. Overall administration authority is by the Park Service. But specific management responsibility can be delegated to particular other Federal agencies or even to volunteer groups or state groups. And what actually is the case here? Suppose there were a regulation that said there shall be no snowmobiling on the trail. Where would that regulation come from? It would be in 36 CFR, which is the Park Service regulations. 1246I specifically says it's up to the Park Service to establish regulations governing units of governing the trail, just as the Park System Organic Act says it's up to the Park Service to decide what regulations govern the park system. Sotomayor, let's go back to what the other side argued was the nightmare of this case. I'm not sure you've quite answered, Justice Alito, in getting to what you're asking, answering to Justice Kagan. It runs through cities, the trail. It runs through downtown Selma, I think we were told, and downtown somewhere else. Does the Park Service, can it regulate the use of that area? Can it put at a halt everything that happens in downtown Selma? Certainly not. So the extent to which it can regulate, that's a question the Court left open in the Sturgeon case. For inholdings, how much, if it's part of the Park Service, it's part of the Forest Service, how much can you regulate private inholdings? And I think there's severe limitations on that, which is why the Park Service has said we're not regulating it. So is downtown Selma an inholding in the Park Service? I'm sorry? Is downtown Selma an inholding in the Park Service on your theory of the case? If there's a, for example, the, if there's a National Historic Trail through that area. There is. We know that to be true. There is. Congress in the National Historic Trails Act specifically said that there's no regulatory power on National Historic Trails for private, State, and local lands. They said exactly the opposite in the Trails Act. Okay. Go ahead. Please. Keep going. Sorry. I was going to say they said exactly the opposite in the Trails Act where they said that the Secretary administers the entire trails. What about the, what about that? Just take the same question and apply it to one of these kinds of trails. I mean, maybe it's not Selma. Maybe it's Hanover, New Hampshire. Exactly the same. Or Kansas City. Is there like a barrier across? I mean, that's what's a little bit tough on your side. The statutes are, it's like ping pong, you know. I mean, yes, they have this, you have that, this, you have that. But the thing that I, is worrying me the most is just what was asked. So all you have to do is take the same question. Okay. You got it? Yep. Okay. What's the answer? Okay. So the answer is they can't go into downtown Hanover and say we're the Federal Government and we're going to control how you use the sidewalks, et cetera. But they are going to work. Not the sidewalks. What happened is this is a state park. And under the ground are some Native American remains. You know? And they would like to have access to those. It isn't going to affect the trail and so forth. They don't want to ask anybody. They just want to do it. All right? So what happened? Unless there is another Federal law that applies to digging up Indian remains, then they could do it. Why? Because they could do it. Because the Park Service has control over the trail on Federal lands. But its regulations do not extend to the trail where it goes over. As far as the statute is concerned, can they do it? We get a Park Service that doesn't like X. They don't want to do it. Can they do it? I mean, and it's underground. In other words, the trail is seen more like an easement. If you see it more like an easement, more like an easement, or covering the surface, then, of course, if it goes across private land or it goes across a state park or it goes across a city, then the state or the city or the whatever it is has a right to use their land as they wish. If it's a park going down into the earth a thousand feet or to the center of the earth, I don't know where these things go. But if that's the case, maybe they can do it, but only if the Park Service agrees. Is that the answer? I think that's right. I think the easement, it's very easy to understand how this would work. But if its property actually belongs to the Park Service, is in the Park Service system, then I think Justice Breyer has an interesting point. And relatedly, I'm struggling with understanding what the answer to this question is. Congress, when it set out who's going to administer these trails, said that the Park Service gets to administer the ones in the east where the Forest Service owns the land. And the Forest Service gets to administer the ones in the west where the Park Service owns the land. You can understand it if it's easements. Again, you can understand that. Everybody's getting a little bit of something in each other's territory. But if the land goes with the assignment of the Management Authority for the trail, then you have the circumstance that a lot of western national parks, Sequoia, Yosemite, others, there are now ribbons throughout those national parks that belong to the Forest Service, and that would be at least open to pipeline development. So while you might thwart a pipeline here, it's not a costless, it's not a zero-sum game. You're going to invite pipelines elsewhere. Now, you might tell me nobody's seeking a pipeline there, but that's not a very good answer, is it? So on what account, I guess I'm asking, would a rational Congress have opened up western national parks to development like this? Well, first of all, I don't think that has happened, Your Honor. I knew you were going to say that. Take the Pacific Crest Trail. It runs through certain portions that are, as you point out, national parks. They could not build a pipeline across those because you can't go under the National Park Service land even if the trail is administered by the Forest Service. Where it runs across Forest Service lands, where it runs across state, local, or private lands, then the Mineral Leasing Act would allow a pipeline to run. Now, they raise the hypothetical, well, couldn't the Forest Service dig up the entire trail and snake a pipeline through there? I would suggest no, both as a legal matter, and of course as a practical matter they couldn't, but as a legal matter they couldn't because they can only allow uses that are consistent with the purposes of the trail. So I think that's a false hypothetical. There's no question that back in 1968, Congress was saying, okay, we want to establish all these national trails, we're going to give some to the Forest Service, we're going to give some to the Park Service, and they're going to be the administrator of those trails, the overall administrators. Every statute that assigns jurisdiction over land to a federal agency uses the word administration. What about the argument that you have textual arguments, the other side has textual arguments, but your position has significant consequences to it, enormous consequences, and Congress did not use language in this Act like it did in the Rivers Act passed on the same day, and the argument goes you would expect to see clear language like that to generate the significant consequences that your position has. You know, I would suggest that Congress used exactly language like that in the Rivers Act. The Rivers Act had to be a little more specific because it put the wild and scenic rivers, along with their adjacent lands, directly into the Park Service. And so it had to specify that it was talking about land as well as the water. But it used the same term administered by that you find in the Trails Act, that you find in the Weeks Act, that you find in the Blue Ridge Parkway Act. In every instance where Congress assigns jurisdiction over land, it uses that term. And to be clear, the Forest Service doesn't own the land. The Park Service doesn't own the land. All the land belongs to the Federal Government. It's administered by agencies designated by Congress, which is exactly what they did in the 1968 Act. Is there any reason why the Secretary of the Interior had to delegate this to the Park Service? It did not have to. It was assumed by Congress that it would do so because throughout the Trails Act, it talks about when it's the Secretary of the Interior, you apply the rules applicable to the Park Service. So if Congress really wanted to bring about the result that you think the statutes command, why would it leave that option? Why wouldn't it require that it be administered by the Park Service rather than by the Secretary of the Interior? So the initial Trails Act decided the question about pipeline rights-of-ways, et cetera. That took two more steps. It took the 1970 General Authorities Act, in which Congress said we want all these disparate areas that the Park Service administered, and we want to treat them on a par. Mr. Kellogg, I think the question that Justice Alito is getting at troubles me, too, and I'm not sure you quite got there. Could the Secretary of the Interior reassign these lands from the Park Service to the Fish and Wildlife Service and then allow pipelines? At this point, I don't think so. Once it's in the park system, it works as – seems to work as a one-way ratchet. There's no authority to decommission. But the Secretary of the Interior could have done so. Could have done so. That's correct. And, in fact, some trails have been, and some scenic rivers have been delegated to the Fish and Wildlife. And why isn't that a strike against your interpretation? Because if Congress had wanted to ensure that these trails were left undisturbed, it could have simply made that assignment directly. Because the critical act from our purposes is the 1970 Act, not so much the 1968 Trails Act, but the 1970 General Authorities Act. If you read the government's reply brief, it's 1617, they make some concessions that I think essentially concede away the case. They said back in 1970, the Park Service listed as units the Blue Ridge Parkway, the Appalachian Trail, and the Wild and Scenic Rivers. But it kept those separate and apart in its listing. It said these are miscellaneous areas. These are recreation areas. These aren't national parks. And then Congress came along in the General Authorities Act and said, no, no, no, everything you administer is a unit of the Park Service. So, as a consequence, two years later, when the Park Service published its new list, it listed the Wild and Scenic Rivers, the Blue Ridge Parkway, and the Appalachian Trail all as units of the park system on a par with national parks. So, is this right that you think that, think of Yosemite, or I think that belongs to the federal government, and I think it belongs to the federal government down to the center of the earth. I mean, I don't know how far you go down when you have property, but maybe you go to the center of the earth. Is your position that that's true of all the trails, too? And that's really what I'm, yeah, okay. Go ahead, Hans. Yes. It's my position, it's our position, that if whatever agency administers the trail also can award decide right-of-ways across that trail, but only consistent with their own rules and regulations. So that it really does erect an impermeable barrier to any pipeline from the area where the natural gas, those resources are located, and to the area east of it where there's more of a need for them. Absolutely incorrect, Your Honor. I'm sorry, but there's 55 pipelines currently running under the Appalachian Trail. Correct. 19 of those are on Federal land pursuant to permanent easements granted before the Trails Act. The rest of them are on State and local lands. I guess maybe I'm not entirely incorrect, but that seems to suggest if it is not the Appalachian Trail land that runs through private property or were preexisting, that to the extent it is a regular Appalachian Trail land, it does operate as a barrier. Only on Federal land. Why? Well, that's what we're talking about. Because the Mineral Leasing Act only applies to Federal land, and it only exempts land in the National Park Service from the definition of Federal land. So State, local, and private lands are unaffected. State, local, private lands are unaffected. Forest service lands through which the trails run are unaffected. The only thing affected is where there happens to be a trail. Is the trail plus its protective corridor, which is about 1,000 feet wide, and which the Park Service, despite their efforts in the reply brief to walk that back, if you look at page 97 of the Joint Appendix, they run through the numbers. You know, it's 2,190 miles long. It's 1,000 feet wide. And they say that's 250,000 acres in the National Park System. Those acres are included in their calculation of the 89 million acres that are part of the National Park Service. Breyer. Go back for just a second. Because once you said yes to the center of the earth, okay? Now, I'm quite pleased, I guess, as a person, not a judge, that Yosemite does go down as far as. But it worries me because what you answered the Chief Justice and the others is, well, Congress has an act that takes care of that. It exempts the private people. But I think we're here concerned not with Congress's statute so much. Of course, we are. But, you see, if you're saying it goes down to the center of the earth, then there are all kinds of things some other Congress might do. This land belongs to the federal government down to the center of the earth. And, actually, what's worrying me is something with that consequence, perhaps Congress would have done more to make clear. But am I right on my consequence? Are you following that? I do, Your Honor. And am I right? That the subsurface lands also belong to the federal government. So Congress could do what it wants in cities, in private property, et cetera. No, you're not right. Because of the statute or because of something else? Because the Mineral Leasing Act applies only to federal lands. And the Park Service does not purport to regulate private, state, and local inholdings. So that's not going to happen. Mr. Connelly, do you think it's possible that these trails are jointly administered, that there's some kind of joint jurisdiction over them? And if that's what is going on here, what would be the effect of that on this question? Well, first of all, if that were what's going on, the Court would have to reverse. Because under 185C2 of the Mineral Leasing Act, it says that if the surface lands are administered by either the Secretary of the Interior or by the Secretary and one or more other agencies, then only the Secretary of the Interior can grant. I guess what I was suggesting is something along the following lines. You have the Weeks Act, and the Trails Act comes along, and it does not completely repeal the Weeks Act. It just layers onto the Weeks Act jurisdiction in the Secretary delegated to the Park Service. It goes along with the Weeks Act and then assumes that these two agencies will figure out a sensible distribution of regulatory and other authority. And if that's the case, and that's what has happened, is it necessarily true that the Secretary has authority over the right-of-way that's at issue here? Well, 1248A says explicitly that it's either the Secretary of the Interior or the Secretary of Agriculture, as the case may be. And as the case may be, we know refers to the Secretary who administers the land. The government, in its reply brief, recognizes that that's a fatal point for them, and so they try to say, no, it's not really mean that. But two provisions before, in 1246I, Congress uses the phrase, as the case may be, in a context that unmistakably refers to the Secretary administering the trail. So that means the Secretary of the Interior, and only the Secretary of the Interior, can grant the rights-of-way in question here. So the head of the Forest Service ---- if we believe there was dual administrative powers, that we had to reverse. But I thought you won below. I'm sorry. Then you'd have to ---- I'm sorry. Then the Fourth Circuit ---- my apologies. The Fourth Circuit was correct that the Secretary, that the head of the Forest Service, did not have authority to grant this pipeline right-of-way. So you would have to affirm on that basis. My apologies for ---- No, you were confusing me. I don't know that you've fully satisfied the parade of horribles that have been put forth. In my own judgment, the most serious one is the view that if everything the Park Department administers, the entire trail, that that means that it can stop pipelines or other things across the country, the 200,000 or whatever miles that this is. And I don't know that you've actually articulated concisely a response to why that parade of horribles is not likely. I don't think it's enough to say they haven't done it. I can give you a very concrete example. In the past 50 years since the Trails Act was passed, there has not been a single new pipeline right-of-way through Federal lands under the Appalachian Trail. There have been a number on State, local, and private lands. And the same would apply to other trails. Now, they acknowledge, for example, that the Blue Ridge Parkway is land in the park system. They acknowledge that wild and scenic rivers are land in the park system. So the same principle that they would block pipelines would apply to them as well. And there's no reason why a parkway constitutes land but a trail does not, or why a wild and scenic river would constitute lands and a trail not. Congress even provided ways in which you could move the trail under certain provisions by acquiring new land on which to run the trail. It did the same thing with the Blue Ridge Parkway. But why would Congress allow a pipeline under the Blue Ridge Parkway but not under the trail when those two run parallel to each other and are very close in some spots? And that's actually a highly disputed point, whether they have allowed a pipeline under the Appalachian Trail, under the Blue Ridge Parkway. 460A3, the provision at issue there is entitled Licenser Permits to Owners of Adjacent Lands. So the one question is, well, is a right-of-way to a pipeline to an owner of an adjacent land? But otherwise it says it has to be non-inconsistent with the use of such lands for pipeline purposes. For pipeline purposes? For parkway purposes. Parkway purposes. And what you look for in the parkway is the Park Service regulations governing the parkway. What you look for for the Appalachian Trail is the Park Service regulations governing the trail specifically cover the kinds of rights-of-ways and pipelines, et cetera, that can pass over or under the trail. Well, if the statutes allow it to go under the parkway, is there any reason why Congress would say, well, you can go this far, but you can't go another thousand feet in some spots and go under the trail? Because they wanted to keep the Appalachian Trail, insofar as it's on Federal land, where the most beautiful parts of the Appalachian Trail are to be found, through the National Forest, through the park system. Congress drew a bright line. Well, I mean, that gets to the fundamental question I have about your argument. There may be all sorts of very good environmental reasons why this pipeline shouldn't be built. And those, I take it, are involved in the other issues in the case. But do you have more than a gotcha argument? Do you — I mean, and sometimes they work, that if you fit these statutes together, this is what they say, and you can't get out of it. But do you really have an argument that this is what Congress intended when it adopted the statutes on which you rely? I think we do. We know, for example, that they had the General Authorities Act before them when they and created an exception for lands in the park system from the pipeline authority that they were granting in that act. Thank you, Counsel. Mr. Yang, two minutes remaining. Mr. Chief Justice, thank you. The statutory regulation of inholdings was addressed in Sturgeon, Section 107.5.1. Counsel has not suggested that that broad authority does not apply. This strikes close to home. The Potomac Heritage Scenic Trail runs straight through Alexandria. Counsel suggests that such regulation of lands in the national park system is limited to purposes of the trail. I would not feel comfortable as a municipal officer, given that's the case. And, moreover, that threatens the cooperative management system, whereby municipalities have allowed the trail for 50 years and, in fact, going back to the 1920s and 30s to cross their lands without necessarily having easements for the trail. Two, land as a property right going down to the earth, that is a very odd fit for this trail that runs across the surface and that can change locations. Three, Congress in Section 1246a1a specifically says Interior has overall administration of the trail, but then says there's no transfer of management responsibilities for federally administered lands. That's the antithesis of the clarity that Congress acts with when it wants to transfer its administration of land. Sotomayor, Mr. Yang, that's the problem, which is read that definition. Management and administration have two different meanings. It says we don't transfer management when. Yang, I get the point, but the problem is Petitioner's first sentence says overall administration is administration and management of the trail. If Petitioner's right that the trail is land, that includes management of the land. But that makes a hash of the second sentence, which says no authority over land management is transferred. So Petitioner also or Respondent has a problem with Sections 1246e and h1, both of which apply only outside the boundaries of federally administered land, h1 where the trail is outside and e where the right-of-way is outside. There is no such thing under Respondent's theory because the right-of-way and the trail is federally administered land. The overall administration, this is the position of the agencies for 50 years, that it's a continuous route. You select the right-of-way and then you relocate it. That's in A2 and B. A uniform marker. You're a backstop for State and local governments acquiring the required right-of-way. Thank you. Roberts. Thank you, counsel. The case is submitted. But before counsel leave, I'd like to invite Mr. Clement to return to the lectern. Mr. Clement, our records indicate that this was your 100th oral argument before the Court. That is a rare milestone. I recognize one of the other members of the exclusive club, Mr. Kneedler, at counsel table. Throughout your career, Mr. Clement, you have consistently advocated positions on behalf of the United States and private clients in an exemplary manner. On behalf of the Court, I extend to you our appreciation for your advocacy before the Court and dedicated service as an officer of this Court. We look forward to hearing from you many more times, beginning, I gather, next week as amicus appointed by this Court. Thank you very much. Thank you, counsel. The case is submitted.